# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2018-0315, <u>State of New Hampshire v. Richard Moore</u>, the court on September 14, 2021, issued the following order:**

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case. The defendant, Richard Moore, appeals his convictions, following a jury trial, for first degree murder, <u>see</u> RSA 630:1-a, I(a) (2016), second degree murder, <u>see</u> RSA 630:1-b, I(b) (2016), and arson, <u>see</u> RSA 634:1, II(a) (2016). The defendant argues that the Superior Court (<u>Delker</u>, J.) erred by denying his motion to suppress, and admitting into evidence, statements he made to police during custodial interrogation after having unequivocally invoked his right to be silent. We affirm.

The trial court found, and the defendant does not dispute, the following facts. The defendant was subject to custodial interrogation in September 2016 following his arrest for the victim's murder. He was read his <u>Miranda</u> rights, indicated that he understood them, and expressly waived them before the interview began. <u>See</u> <u>Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966). Almost exactly one hour after the interview began, the defendant made the following statement that he argues constituted an unequivocal invocation of his right to remain silent: "Nothing happened. So I don't even -- honestly if you guys are automatically charging me, I don't see why there's any point to continue talking." After the defendant made this statement, there was a brief pause before he was asked another question. The defendant then continued to speak with the officers, professing his innocence. Approximately eight minutes after making the statement, the defendant asked for a cigarette break. After arranging for the defendant to smoke cigarettes, the interview continued for an additional hour and a half. During that time, the defendant confessed.

Before trial, but after the deadline to file such motions had passed, the defendant moved to suppress the statements he made after his alleged invocation of his right to remain silent. The State objected. The defendant waived any claim to an evidentiary hearing on his motion. Accordingly, despite the late-filed motion and impending trial date, the trial court agreed to rule on the motion based upon the videotaped recording and transcript of the police interview. Thereafter, the trial court denied the defendant's motion, ruling that "the defendant's statement . . . was not even an invocation of his right to remain silen[t]," but rather "was merely a passing express[ion] of frustration that the police were not accepting his protestations of innocence."

The sole question on appeal is whether, by so ruling, the trial court erred.  Although, ordinarily, "[w]e review a trial court's findings concerning which words [an accused] used to invoke his [or her] rights under the clearly erroneous standard," in this case we accept those findings because the defendant does not challenge the accuracy of the quoted language.  State v. Pouliot, 174 N.H. 15, 19 (2021).  The only issue for our review, therefore, is whether the defendant effectively invoked his right to remain silent, an issue that we review de novo because it raises a question of law.  See id.

The defendant argues under both the Federal and State Constitutions. We address his arguments under the State Constitution first, citing federal law only to aid in our analysis.  State v. Ball, 124 N.H. 226, 231-33 (1983).

Both Part I, Article 15 of the State Constitution and the Fifth Amendment to the Federal Constitution establish a privilege against self-incrimination.  See N.H. CONST. pt. I, art. 15; U.S. CONST. amends. V, XIV.  Although neither constitution requires any specific procedures for protecting the privilege against self-incrimination during custodial interrogation, State v. Watson, 170 N.H. 720, 724 (2018), the Supreme Court in Miranda developed rules for safeguarding it, see Miranda, 384 U.S. at 467-73.  Under Miranda, "when a person is taken into custody or deprived of his freedom in any significant way, and prior to interrogating him, the police must tell him that he has a right to remain silent, that anything he says can and will be used against him, and that he has a right to counsel."  Watson, 170 N.H. at 724 (quotation omitted); see Miranda, 384 U.S. at 467-73.  If, after having been informed of his Miranda rights, an accused in police custody "indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease."  Miranda, 384 U.S. at 473-74 (footnote omitted); see State v. Lynch, 169 N.H. 689, 693 (2017).  Subsequent decisions have made clear that "an accused who wants to invoke his or her right to remain silent [must] do so unambiguously."  Berghuis v. Thompkins, 560 U.S. 370, 381 (2010); see Watson, 170 N.H. at 726-27.

To determine whether an accused unambiguously invoked his or her right to remain silent, we examine the accused's statements under the totality of the circumstances.  Pouliot, 174 N.H. at 19.  To be an effective invocation of the right to remain silent, the accused "must articulate his desire . . . sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be" an invocation of the right to remain silent. Davis v. United States, 512 U.S. 452, 459 (1994) (concerning the right to have an attorney present during custodial interrogation); see Berghuis, 560 U.S. at 381-82 (holding that the clarity required of an effective invocation of the right to counsel applies to determining whether an accused has effectively invoked the right to remain silent).

2

The defendant argues that "[s]everal considerations combine to compel the conclusion that [he] unambiguously invoked his right to silence," including the fact that he did not use "words of equivocation, such as 'I guess,' or 'maybe,'"; his statement "sought to end the conversation"; and he "did not follow up his invocation with any further unprompted statement." We are not persuaded.

Here, the defendant "neither said that he wanted to remain silent nor that he did not want to speak with the police." Watson, 170 N.H. at 727; see Berghuis, 560 U.S. at 382. "Had he made either of these simple, unambiguous statements, he would have invoked his right to cut off questioning." Berghuis, 560 U.S. at 382 (quotation omitted); see Watson, 170 N.H. at 727. Rather, his statement, "I don't see why there's any point to continue talking," was conditioned upon his statement that "if you guys are automatically charging me." In addition, it was made in the context of continued professions of innocence, i.e., "Nothing happened." See State v. Chapman, 135 N.H. 390, 396-98 (1992). A reasonable officer in the circumstances would not have understood the defendant's statement to be an invocation of the right to remain silent. Moreover, the defendant did not, in fact, remain silent, but rather continued to speak with the officers for another hour and a half. See Lynch, 169 N.H. at 698 (observing, when concluding that the defendant did not unequivocally invoke his right to remain silent, that he "did not stop talking after making the statement"). Under the totality of the circumstances, we conclude that the defendant's statement did not constitute an unambiguous invocation of the right to remain silent. See Pouliot, 174 N.H. at 23. Because the Federal Constitution affords the defendant no greater protection than does the State Constitution under these circumstances, we reach the same result under the Federal Constitution as we do under the State Constitution. See Watson, 170 N.H. at 727. Any question in the notice of appeal that the defendant did not brief is deemed waived. See State v. Stanin, 170 N.H. 644, 652 (2018).

Affirmed.

HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred.

**Timothy A. Gudas,
Clerk**

3